IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 10, 2011

## IN THE MATTER OF: SCOTT C.

**Appeal from the Juvenile Court for Lincoln County**
**No. J57-09A       Charles Rich, Judge**

**No. M2011-00094-COA-R3-PT - Filed June 27, 2011**

Mother appeals the termination of her parental rights. The trial court found by clear and convincing evidence that Mother's parental rights should be terminated on the grounds of mental incompetence, substantial noncompliance with the provisions of the permanency plan, and persistence of conditions, as well as a finding that termination of her rights was in the best interest of the child. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

S. Craig Moore, Fayetteville, Tennessee, for the appellant, Cynthia C.

Robert E. Cooper, Jr., Attorney General and Reporter, and Lyndsay Fuller Sanders, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

The minor child at issue came into the custody of the Department of Children's Services ("the Department") shortly after his birth on March 18, 2009. On March 20, 2009, the Department filed a petition to have the child adjudicated dependent and neglected. The petition contended that the child was at risk of significant harm if left in Mother's care based upon Mother's history of severe mental illness, drug abuse, and a lack of parenting skills. The petition also stated that four of Mother's other children had been previously removed from her custody. The Department was granted temporary custody of the child on March 23, 2009, and on June 15, 2009, the child was adjudicated dependent and neglected.

The first permanency plan was developed on April 14, 2009, and the stated goal was reunification of the child with Mother. The plan required Mother to participate in a psychological assessment, a parenting assessment, a psychiatric evaluation, and follow all recommendations. Mother was also required to continue visitation with her psychiatrist and take her prescribed medication, maintain a drug and alcohol free lifestyle, submit and pass random drug screens, not display violent behavior, financially support the child by a legal source of income, apply for public housing or locate suitable housing, maintain stable housing, inform the Department of her residence, and allow monthly home visits by the Department.[1]

On August 18, 2009, and on September 8, 2009, Elysse Beasley, a senior psychological examiner, met with Mother for a psychological assessment.[2] Ms. Beasley diagnosed Mother with schizophrenia, disorganized type.[3] Ms. Beasley observed that Mother presented with delusions, disorganized speech, and blunted affect. Ms. Beasley further opined that Mother was unable to adequately care for herself and her needs, or her children and their needs.[4] An Adult-Adolescent Parenting Inventory administered by Ms. Beasley indicated that Mother was a high risk in four of the categories, which were inappropriate expectations of children, parental lack of empathy, reversing parent-child roles, and oppressing children's power and independence, and medium risk in the strong belief in the use of corporal punishment category. Based upon this, Ms. Beasley stated Mother was a high risk to be abusive and should not regain physical custody of her children.

Following the examination of Mother by Ms. Beasley, the permanency plan was revised to add the goal of adoption of the child.[5]

On November 18, 2009, the Department filed the petition to terminate Mother's parental rights upon the grounds of abandonment by failure to provide a suitable home, substantial noncompliance with the terms of the parenting plan, persistence of conditions, and mental incompetence.

---

[1]This plan was ratified by the court on June 15, 2009.

[2]The deposition of Ms. Beasley was filed with the trial court during the termination hearing, which occurred on November 5, 2010.

[3]Ms. Beasley noted that the MMPI-2 results did not reflect her psychosis, which could be due to Mother having previous exposure to the test.

[4]Mother has three other children who are in the custody of the Department.

[5]The plan was revised on the following dates: November 18, 2009, February 17, 2010, and August 12, 2010. Each plan was ratified by the trial court. The requirements of the permanency plans did not change.

The case was tried on November 5, 2010. During the hearing, the trial court observed that Mother's testimony was rambling, disjointed, and often nonsensical. She was unable to answer basic questions with coherent answers. For example, when questioned by the Department's attorney about the tests given Mother by Ms. Beasley, the following exchange occurred:

Attorney: Now, you did a psychological assessment and a parenting assessment with Ms. Beasley, right?

Mother: I did. She gave me a test for a farming license.

Attorney: For a farming license?

Mother: Yes. She didn't – she didn't give me no test on nothing except for a farming license.

Attorney: Okay. All right.

Court: And let me make sure I understand. You're talking about farming, like planting crops?

Mother: Yes, sir.

Court: Okay.

Mother: Growing food.

Court: Okay.

Mother: For the State, which I can do.

Attorney: And when you talked to Ms. Beasley, you didn't even mention [the child], right?

Mother: No. She didn't – she didn't give me no test for nothing except to be a farmer, and I didn't even pick my license up.[6]

---

[6]We do not include this testimony to embarrass or belittle Mother, but merely to demonstrate the testimony from which the trial court found Mother's testimony was erratic and delusional.

Mother also denied having any mental health condition. Mother claimed she did not have schizophrenia, but instead had a disease called "scofia," which she was cured of following three days in the Skyline mental health facility. Mother further testified that because she did not have any mental illness, there was no reason for her to take her medication. She did admit that the Department had helped her to complete some of the tasks required on the parenting plan. Mother claimed that she was currently residing in a suitable residence, though it was not completed yet. Mother testified that she was not employed, but received disability benefits under Social Security and food stamps.

The Department presented the testimony of Carrie Buchanan, the Department caseworker and supervisor, who took over Mother's case from the previous caseworker, Anna Rose, in June 2010. As Ms. Rose's supervisor, Ms. Buchanan stated that she was very familiar with Mother's case and testified to the efforts of the Department in aiding Mother. Ms. Rose assisted Mother by arranging for the alcohol and drug assessment and the psychological assessment. She also helped Mother fill out an application for public housing and took the application to the housing authority for Mother, and provided Mother with additional information on another housing option. When Ms. Rose became aware that Mother was not receiving treatment at Centerstone, she took Mother to the facility in order to set up appointments; however, Mother failed to follow up with these appointments. Mother also refused to participate in three drug screens that the Department tried to administer. Ms. Buchanan stated that Mother only informed the Department of two of her residences, both of which were deemed unfit for a child by the Department. Ms. Buchanan stated that visits to these homes revealed extremely unsanitary conditions unsuitable for a young child to live in. Mother had not informed the Department of the residence that she testified to at the hearing, and thus, the Department had not inspected the residence to determine if it was a suitable home for a child. Ms. Buchanan also provided Department records, which referenced an incident in which Mother became violent towards her sister at a foster care review board when the child was present.

The minor child's foster mother, who had cared for the child since he was two months old, testified that the child was doing very well in her care and that she wished to adopt the child.

At the conclusion of the trial, the trial court found that the Department presented clear and convincing evidence to establish three statutory grounds for termination of parental rights: mental incompetence, substantial noncompliance with the requirements of the permanency plan, and persistence of conditions. On November 18, 2010, the trial court's order was entered outlining its findings of fact and conclusions of law. The trial court found that there was significant evidence that Mother was mentally incompetent noting Mother's testimony during the hearing was "erratic and delusional." The court further found that

Mother's testimony was "replete with instances of delusional thoughts reflecting a break with reality," including Mother's use of made-up words. The court found that Mother denied having any mental illness, despite the diagnosis of Ms. Beasley that Mother suffered from schizophrenia, disorganized type. The court found significant Ms. Beasley's statement that Mother's problem is long-term and unlikely to change in the future. The court also found the Department demonstrated by clear and convincing evidence a persistence of conditions based upon Mother's mental incompetence, which was the reason for the child's removal from Mother's care, and substantial noncompliance with the requirements of the permanency plan based upon Mother's failure to receive treatment for her condition, her refusal to take medication, her failure to obtain suitable housing, and her refusal to submit to several drug screens. The court also found by clear and convincing evidence that termination of Mother's parental rights was in the best interests of the child because Mother had failed to make an adjustment in her circumstances despite reasonable efforts by the Department, that a change in caregivers would have a detrimental effect on the child, that the physical environment in Mother's home is unhealthy and unsafe for the child, and that Mother's current mental and emotional status prevents Mother from providing safe and stable care for the child. Thus, the court terminated Mother's parental rights. Mother filed a timely appeal.

## ANALYSIS

### I.
### STANDARD OF REVIEW

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. *In re S.L.A.*, 223 S.W.3d 295, 299 (Tenn. Ct. App. 2006).

Parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). The petitioner has the burden of proving that there exists a statutory ground for termination, such as abandonment or failing to remedy persistent conditions that led to the removal of the child. *See* Tenn. Code Ann. § 36-1-113(c)(1); *Jones*, 92 S.W.3d at 838. Only one ground need be proved, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In addition to proving one of the grounds for termination, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re F.R.R.*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing

evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child). Therefore, a court may terminate a person's parental rights if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is clearly and convincingly established that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Whether a statutory ground has been proved by the requisite standard of evidence is a question of law to be reviewed de novo with no presumption of correctness. *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008) (no Tenn. R. App. P. 11 application filed) (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810).

II.
GROUNDS FOR TERMINATION

Mother challenges the trial court's findings that the Department proved the grounds of mental incompetence set forth at Tenn. Code Ann. § 36-1-113(g)(8)(B), substantial noncompliance with the conditions of the permanency plan set forth at Tenn. Code Ann. § 36-1-113(g)(2), and persistence of conditions set forth at Tenn. Code Ann. § 36-1-113(g)(3).[7] We shall address each ground in turn, though, to terminate a parent's parental rights, the Department must only prove one ground by clear and convincing evidence. *See In re C.W.W.*, 37 S.W.3d at 475-76.

A.
MENTAL INCOMPETENCE

The trial court terminated Mother's parental rights on the ground of mental incompetence set forth at Tenn. Code Ann. § 36-1-113(g)(8)(B)(i), which provides a parent's parental rights may be terminated when:

> The parent or guardian of the child is incompetent to adequately provide for the further care and supervision of the child because the parent's or guardian's mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent or guardian will be able to assume or resume the care and responsibility for the child in the near future.

---

[7]The Department of Children's Services asserts in its brief that Mother challenged only two grounds in her appeal, and, thus it chose not to address the third ground. However, Mother listed all three grounds for her termination as issues in her brief and thus we shall address all three grounds in our opinion.

Mother contends that the trial court erred in finding that the Department demonstrated by clear and convincing evidence that Mother was mentally incompetent. She argues that the testimony does not demonstrate that she is mentally incompetent. Mother further contends that the report of Ms. Beasley was that Mother did not show any major diagnostic criteria and that Mother scored normal in the content and clinical scales. Mother further contends that the Department failed to provide the mental health services that Mother needed and therefore her parental rights should not be terminated pursuant to the statutory ground for mental incompetence.

The Department presented overwhelming evidence of Mother's mental health issues. Ms. Beasley, a senior psychological examiner, diagnosed Mother with schizophrenia, disorganized type based upon Mother meeting several of the criteria for diagnosis, including delusions, disorganized speech, and flat affect.[8] Ms. Beasley further stated that Mother's condition was long-term and unlikely to improve. While Ms. Beasley noted that Mother scored in the normal range on one of the tests administered, she stated this could be due to Mother's previous exposure to the same test during other evaluations. While Mother's brief contends that the trial court made inappropriate observations about Mother during the hearing, such as that Mother appeared "disheveled" and "dirty," we believe the trial court was merely attempting to demonstrate the clear lack of coherence that Mother exhibited during the hearing. The trial court focused more significantly on Mother's testimony during the hearing, which often made little sense and demonstrated an obvious break from reality. Despite Mother's assertion in her brief that the Department failed to assist her in treating her mental health issues, the record clearly demonstrates that the Department attempted to help Mother by making her appointments for the psychological assessment and alcohol and drug assessment, and by taking her to set-up her sessions at Centerstone. Mother, however, refused to cooperate, admit that she has mental health issues, or comply with the recommendations of the medical professionals who attempted to help her. We find that the trial court correctly found the Department demonstrated by clear and convincing evidence that Mother suffers from serious mental health issues and is clearly unable to care for a child in her current state, and is unlikely to be able to do so in the near future.

---

[8]The Department also provided another deposition to the court of Tim McConkey, who previously treated Mother, and also determined that Mother presented with symptoms of schizophrenia. McConkey also recommended that Mother not have unsupervised contact with small children or be responsible for her children.

## B.
### SUBSTANTIAL NONCOMPLIANCE WITH REQUIREMENTS OF PERMANENCY PLAN

A parent's rights may be terminated upon clear and convincing evidence that the parent was in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). The terms of the permanency plan, however, may not be arbitrary, they must be "reasonable and related to the remedying the conditions which necessitate foster care placement." *In re Valentine*, 79 S.W.3d at 547 (quoting Tenn. Code Ann. § 37-2-403(a)(2)(C)). The issue of substantial noncompliance with the requirements of a permanency plan is a question of law; therefore, it is reviewed de novo with no presumption of correctness. *Id.* at 548.

The child was placed in the custody of the Department based upon Mother's history of mental incompetence, the fact she had not been able to care for her four other children and, thus, that she was unable to care for the child. The child was adjudicated dependent and neglected for the above reasons and the terms of the parenting plan were aimed at assisting Mother to be able to care for the child. The plan required that Mother obtain a psychological assessment, obtain an alcohol and drug assessment, follow the recommendations of her assessments, continue receiving treatment from her psychiatrist and take all prescribed medication, submit to and pass random drug screens, apply for public housing, obtain suitable housing, and keep the Department informed of her residence. We find that these requirements were clearly reasonable and aimed at helping Mother in her ability to care for the child and, thus, consistent with *In re Valentine*, 79 S.W.3d at 547, and Tenn. Code Ann. § 37-2-403(a)(2)(C).

We also find that the Department exerted reasonable efforts in assisting Mother to meet these requirements by scheduling appointments for Mother, often taking her to the appointments or scheduling the appointments at the Department offices. Ms. Rose, Mother's caseworker, helped Mother fill out the application for public housing and turned the paperwork in for Mother. When she became aware Mother was not receiving her treatment, Ms. Rose took Mother to Centerstone to help her schedule her appointments. The few requirements of the parenting plan that Mother completed were due in large part to the efforts of the Department. Despite these reasonable efforts, Mother refused to seek treatment, refused to admit she had a problem, refused to take prescribed medication, and refused drug screens. Mother also failed to obtain suitable housing. Thus, we affirm the trial court's finding that the Department presented clear and convincing evidence that Mother failed to substantially comply with the requirements of the permanency plan.

## C.
### PERSISTENCE OF CONDITIONS

The third ground that the trial court found as a basis for the termination of parental rights was persistence of conditions, set forth at Tenn. Code Ann. § 36-1-113(g)(3), which states a parent's rights may be terminated upon a finding that:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

The child first entered the care of the Department in March 2009 due to Mother's mental incompetence and her inability to care for the child. The child was adjudicated dependent and neglected in an order entered June 15, 2009, based upon the finding that due to Mother's mental illness, she was unable to care for the child and posed a risk of harm to the child. The trial court found that the clear and convincing evidence at trial demonstrated that Mother's mental health had not improved. In fact, the testimony of Ms. Beasley was that Mother's mental condition was not likely to improve. Further, the testimony of Ms. Buchanan was that she felt Mother's mental condition had declined. The evidence also demonstrated that Mother did not believe she had a mental condition, needed treatment for a mental condition, or needed to take medication. The child was in a loving, stable environment in his foster home, and the foster mother testified that she wished to adopt the child. Based upon the evidence in the record, we affirm the trial court's determination that the Department demonstrated by clear and convincing evidence that Mother's parental rights should be terminated on the ground of persistence of conditions set forth at Tenn. Code Ann. § 36-1-113(g)(3).

III.
## BEST INTEREST

Once the trial court has determined there is at least one ground for termination, the court must conduct a best interests analysis using the statutory factors set forth at Tenn. Code Ann. § 36-1-113(i)(1)-(9). The nine statutory factors are not exclusive or exhaustive, and other factors may be considered by the court. *See In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The court is not required to find every statutory factor applicable in order to determine that termination is in the child's best interest; a finding of but a few significant factors may be sufficient to justify a finding that it is in the child's best interest that the parent-child relationship be terminated. *See id.* at 667. The best interest analysis is to be determined from the perspective of the child rather than the parent. *See State of Tenn., Dep't of Children's Serv. v. L.H.*, No. M2007-00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Dec. 3, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

In this case, the trial court determined that it was clearly in the best interest of the child to terminate Mother's parental rights. We agree with this finding. The evidence regarding Mother's mental condition clearly and convincingly established that Mother has failed to make a lasting adjustment to her circumstances, conduct, or conditions such that it is safe for the child to be in her care despite the reasonable efforts of the Department. *See* Tenn. Code Ann. § 36-1-113(i)(1)-(2). The evidence also established by the requisite standard that Mother's severe mental illness was detrimental to the child and prevented Mother from effectively providing safe and stable care to the child. *See* Tenn. Code Ann. § 36-1-113(i)(8). The child was doing very well in the care of his foster mother, who had been his caregiver almost from the time of his birth, and thus we find that the effect of a change in caretakers and physical environment is likely to have a detrimental effect on the child's emotional, psychological, and medical condition. *See* Tenn. Code Ann. § 36-1-113(i)(5).

For the above reasons, we affirm the trial court's determination that termination of Mother's parental rights was in the best interest of the child.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Department of Children's Services due to Mother's indigency.

_____
FRANK G. CLEMENT, JR., JUDGE